UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL J. SHUFF,

                    Plaintiff,

          v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                    Defendant.

Case No. C16-5579-JCC

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Michael J. Shuff seeks review of the denial of his application for Disability Insurance Benefits (DIB). Dkt. 11. On September 2, 2010, Mr. Shuff filed an application for DIB alleging disability commencing on September 22, 2001. The ALJ determined that Mr. Shuff's date last insured (DLI) was September 30, 2008. Tr. 984. To be entitled to DIB, Mr. Shuff must establish disability existed on or before his DLI. *See* 42 U.S.C. §416(i)(3); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1995). In a decision issued on December 17, 2015, the ALJ found that, through the DLI: Mr. Shuff's lumbar degenerative disc disease was a severe impairment; this impairment did

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

not meet the Listings[2]; he retained the Residual Functional Capacity ("RFC") to perform sedentary work except he would be unable to stoop, squat, crouch, crawl, kneel and climb, would be absent from work once every 2 months, and was capable of unskilled, repetitive, and routine work due to pain and fatigue from his lumbar spine disorder; he could not perform any past relevant work but was not disabled because he could perform other jobs that existed in significant numbers in the national economy. Tr. 982-997. The Appeals Council denied Mr. Shuff's exceptions making the ALJ's decision the Commissioner's final decision.[3] Tr. 972-78.

Mr. Shuff contends the ALJ erred by improperly evaluating: (1) the medical evidence; (2) his testimony; (3) the lay testimony; (4) his RFC; and (5) his ability to perform jobs in the national economy at step five. Dkt 11 at 2. As relief, Mr. Shuff asks the Court to remand the case for an award of benefits or alternatively for further administrative proceedings. *Id*. at 19.

For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the matter with prejudice.

## DISCUSSION

The Court may reverse an ALJ's decision only if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Even then, the Court will reverse the ALJ's decision only if the claimant demonstrates that the ALJ's error was harmful. *Id*.

**A.    Medical Evidence**

Mr. Shuff contends the ALJ erroneously assessed the medical opinions of Kenneth J. Brown, NP, Alan G. Greenwald, M.D., Virginia E. Swanson, M.D., Scott Van Linder, M.D., John

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

S. Wendt, M.D., Arnel Brion, M.D., Patrick Bays, D.O., Brian Tallerico, D.C., Jennifer Carl,

M.D., Marie Boudreaux, M.D., and Max Selisch, P.T.[4]  The ALJ must provide "clear and

convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor.  *Lester*

*v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996).  When contradicted, a treating or examining

doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported

by substantial evidence in the record.  *Id.*  The ALJ may reject the opinion of a non-acceptable

medical source, such as a nurse practitioner or a physical therapist, by giving reasons germane to

the opinion.  *See Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

### 1. *Kenneth J. Brown, ARNP*

In August 2009, Mr. Brown evaluated Mr. Shuff and opined that: he could sit for 15

minutes continuously before having to alternate postures by standing or walking for 15 minutes;

that it was medically necessary for him to elevate his legs to waist level while sitting; he could sit

for 2 hours total in an 8 hour workday; could stand or walk about continuously for 30 minutes

before needing to lie down and recline for 15 minutes; could stand and walk a total of 1 hour

during an 8 hour workday; would require additional breaks to rest during an 8 hour workday;

would need to rest, lie down or recline for 1 hour in an 8 hour workday; could occasionally lift up

to 20 pounds; could frequently balance and never stoop; could occasionally rotate and flex his

---

[4] Mr. Shuff also summarizes various parts of the medical record and concludes "the ALJ errs by failing to acknowledge that this evidence, considered in its entirety, is consistent with Shuff's testimony about his symptoms and limitations, and shows that Shuff has been unable to perform any type of full-time work activity on a sustained basis." Dkt. 11 at 6.  However, Mr. Shuff provides no explanation as to how or why the ALJ erred in regards to any of this evidence.  This conclusory argument fails to identify or establish harmful error in the ALJ's evaluation and interpretation of the evidence and, as such, Mr. Shuff fails to carry his burden.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at * 2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)( "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 3

neck forward and never flex his neck backward; could frequently reach, handle and finger; his pain would constantly interfere with his attention and concentration; he was severely limited in his ability to deal with work stress; he required a cane for ambulating; and he would be absent from work more than 3 times per month. Tr. 967-71. Mr. Brown indicated Mr. Shuff's "condition existed and persisted with the restrictions outlined … at least since February 22, 2001." Tr. 971. In June 2015, Mr. Brown completed another medical source statement indicating that Mr. Brown's symptoms and restrictions had increased since he assessed him in 2009. Tr. 1182-85.

The ALJ found Mr. Brown's opinions inconsistent with the medical record from the relevant period. Tr. 994-95. While "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis,"[5] a retrospective opinion may be discredited if it is inconsistent with, or unsubstantiated by, medical evidence from the period of claimed disability. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may properly reject a medical opinion that is inconsistent with the record). This was a germane reason to discount Mr. Brown's opinions and substantial evidence supports the ALJ's finding. As the ALJ notes, Mr. Brown's opinions purport to relate back to 2001 but were rendered after Mr. Shuff's DLI and Mr. Brown only began treating Mr. Shuff shortly before his DLI. Tr. 994-95. The ALJ further notes that, contrary to Mr. Brown's opinion, the record shows Mr. Shuff's condition did not remain at a fixed level of disabling impairment from 2001 to 2009, but, rather substantially improved following surgery in

---

[5] *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988); *see also* Social Security Ruling ("SSR") 83–20 ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.").

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 4

2003 and 2004.  Tr. 994-95.  As discussed in more detail below, the medical opinions of treating

physician Jennifer Carl, M.D. from 2003 to 2006 indicate that, although Mr. Shuff's functional

capacity decreased somewhat prior to surgery in 2003, he was never as limited as Dr. Brown

opined during this period, and his functional capacity significantly increased following surgery.

Tr. 353-56, 389, 583, 645-35, 991-992.  In fact, in February 2006, Dr. Carl opined Mr. Shuff was

capable of performing the occupations of meat wrapper and fuel station attendant, the physical

requirements of which appear to be in excess of those for sedentary work in most areas.[6]  Tr. 583.

Moreover, the medical opinions of Dr. Tallerico in 2006, Dr. Boudreaux in 2006, Mr. Selisch, in

2002 and 2005, and Guthrie Turner, M.D., in 2011, all indicate Mr. Shuff is capable of

substantially more than opined by Mr. Brown.  Accordingly, the ALJ reasonably discounted Mr.

Brown's retrospective opinion as inconsistent with, or unsubstantiated by, medical evidence from

the relevant period.

The ALJ also found Mr. Brown did not provide any discussion to support his assessment

that Mr. Shuff was limited to the extent provided in his opinion from 2001 through 2009 (or to

2015).  Tr. 994.  While Mr. Brown did note some clinical findings with respect to Mr. Shuff's

lumbar spine on examination in 2009, as the ALJ notes, he did not begin treating Mr. Shuff until

just prior to his DLI in 2008 and did not identify what records, if any, he reviewed from the

relevant period prior to treating him.  Tr. 994-95.  An ALJ may give less weight to a medical

opinion that is "brief, conclusory, and unsupported by the record as a whole, or by objective

medical findings."  *Batson*, 359 F.3d at 1195.  The ALJ also reasonably discounted Mr. Brown's

---

[6] Fuel center clerk job analysis requires the ability to stand 3 hours without a break for up to 8 hours per day, sit up to 2 hours without a break up to 3 hours per day, and rarely lift and carry 15 pounds a distance of 2 feet.  Tr. 450-56. The meat wrapper job analysis requires lifting 35 pounds occasionally, the ability to stand 8 hours per day, walk two hours without a break, carry 35 pounds for 30 feet and push 50 pounds.  Tr. 450.

opinion that Mr. Shuff had significant disabling limitations from 2001 through 2009 (or 2015) on this basis.[7]

In sum, the ALJ did not err in discounting Mr. Brown's opinion.

### 2. *Alan Greenwald, M.D.*

In July 2009, Dr. Greenwald examined Mr. Shuff and opined that he has "chronic back and L5 sensory and motor deficits which are disabling him from his ability to carry out gainful employment." Tr. 870. The ALJ discounted Dr. Greenwald's opinion because it was rendered 8 months after Mr. Shuff's DLI and was inconsistent with the relevant medical evidence, including MRI studies, independent medical examinations, and the opinions of treatment providers. Tr. 993. "Post-DLI opinions may be properly discounted where … the opinion does not have retrospective applicability." *Denison v. Berryhill*, 2017 WL 3592454 at *3 (W.D. Wash. Aug 21, 2017). Moreover, even where an opinion is retrospective it may nonetheless be discounted if it is inconsistent with medical evidence from the relevant period. *Johnson*, 60 F.3d at 1433; *Batson*, 359 F.3d at 1195.

Substantial evidence supports the ALJ's findings. Dr. Greenwald's opinion was rendered many months after Mr. Shuff's DLI and nothing in the opinion indicates it is intended to relate back to the relevant period.[8] Moreover, here, as with Mr. Brown, the opinions of Dr. Carl from

---

[7] The ALJ also gave other reasons for discounting Mr. Brown's opinion. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting the opinion. *Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (including an erroneous reason among other reasons is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

[8] Mr. Shuff contends Dr. Greenwald's opinion "arguably relates back to at least March 2007" but fails to explain or cite to any evidence supporting this contention. Dkt. 11 at 8. Accordingly, the Court rejects this conclusory argument.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE

- 6

2003 to 2006, Dr. Tallerico in 2006, Dr. Boudreaux in 2006, Mr. Selisch in 2002 and 2005, and Dr. Turner in 2011, all indicate Mr. Shuff was functionally capable of substantially more than opined by Dr. Greenwald, and was capable of working during the relevant period. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (The opinion of a doctor who examines the claimant after the expiration of his disability insured status is entitled to less weight than the opinion of a doctor who completed a contemporaneous exam).

In sum, the ALJ did not err in discounting Dr. Greenwald's opinion.

### 3. Virginia Swanson, M.D.

In January 2011, Dr. Swanson examined Mr. Shuff and opined that "at this point, he does appear to be quite disabled because of a combination of limited activity intolerance, pain, and emotional stress." Tr. 957-58. The ALJ reasonably discounted Dr. Swanson's opinion because it was provided well after Mr. Shuff's DLI and had little probative value for assessing his abilities during the period at issue. Tr. 994. As noted above, post-DLI opinions may be properly discounted where they do not have retrospective applicability. *See Denison*, 2017 WL 3592454 at *3; *Morgan v. Colvin*, 2013 WL 6074119, at *10 (D. Or. Nov. 13, 2013) ("[I]t is well-established that an ALJ may reject a medical opinion, even that of a treating doctor, where 'it was completed ... years after the claimant's date last insured and was not offered as retrospective analysis.' " (quoting *Senter v. Astrue*, 2011 WL 3420426, at *3 (C.D. Cal. Aug. 4, 2011))); *Johnson*, 60 F.3d at 1432 (An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period.). Here, Dr. Swanson's opinion was rendered several years after the DLI and does not relate back to the relevant period.

Mr. Shuff argues the ALJ erred in discounting Dr. Swanson's opinion on this basis

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE

- 7

because it "is consistent with the other evidence, and shows that Shuff's medical conditions continued to be disabling through the ALJ's decision." Dkt. 11 at 8. However, Mr. Shuff presents nothing to support this argument and at very best it constitutes an alternative interpretation of the record but fails to establish the ALJ's interpretation was unreasonable. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (When the evidence is susceptible to more than one rational interpretation, the court must affirm the ALJ's findings if they are supported by inferences reasonably drawn from the record.). Thus, the ALJ did not err in evaluating Dr. Swanson's opinion.

### 4. Scott Van Linder, M.D., and John S. Wendt, M.D.

In September 2003, Dr. Van Linder and Dr. Wendt performed an independent medical examination (IME) of Mr. Shuff and opined that he was limited to "a sedentary or less level of activity" but also stated they would consider him to be at a "disabled status." Tr. 332. The ALJ gave some weight to Dr. Van Linder and Dr. Wendt's opinion. Tr. 993-94. The ALJ noted that the restriction to sedentary activity and disabled status appeared inconsistent. *Id.* The ALJ further noted that the purpose of the assessment was to determine whether Mr. Shuff met the criteria for workers compensation, namely whether he should have surgery or whether he was fixed and stable, not to determine a specific residual functional capacity for Social Security claims. *Id.* The ALJ also noted that the term "sedentary" is not defined and it may be that the workers compensation system would consider Mr. Shuff disabled with a sedentary rating and the inability to return to his profession. *Id.* However, "presuming" the definition of "sedentary" was the same as the Social Security requirements, the ALJ found the opinion was not inconsistent with the RFC. *Id.*

Mr. Shuff argues that Dr. Van Linder and Dr. Wendt opined he was "currently disabled,

unable to perform even sedentary work." Dkt. 11 at 9. However, this is not what Dr. Van Linder and Dr. Wendt stated in their opinion. The ALJ also argues that the doctors described many objective findings but fails to explain how these findings undermine the ALJ's interpretation of the opinion. *Id.* Mr. Shuff's arguments fail to meet his burden of establish harmful error. *See Avila*, 2008 WL 4104300 at * 2 (citing *Northwest Acceptance Corp.*, 841 F.2d at 923-24 (party who presents no explanation in support of claim of error waives issue); *see also Shinseki*, 556 U.S. at 409 (2009)( "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Even if the ALJ's interpretation of the opinion as described above was not reasonable, the ALJ also finds this opinion, rendered just a few months before Mr. Shuff's first surgery, inconsistent with the record as a whole which shows significant improvement after his surgeries. Tr. 994. Specifically, the ALJ notes that the opinion indicates Mr. Shuff was not fixed and stable at the time, and that the doctors expected surgery would lead to medical improvement. *Id.* The ALJ further notes that Dr. Van Linder and Dr. Wendt did not reassess Mr. Shuff after his 2003 and 2004 surgeries and the evidence shows significant improvement. *Id.* Under the circumstances, the ALJ reasonably concluded that these opinions, rendered shortly before surgery, were not indicative of Mr. Shuff's long-term functioning and were inconsistent with the record as a whole regarding Mr. Shuff's functional capacity. *See Batson*, 359 F.3d at 1195 (an ALJ may properly reject a medical opinion that is inconsistent with the record); s*ee, e.g., Lawson v. Colvin*, 2013 WL 6095518 (W.D. Wash. Nov. 20, 2013) (ALJ properly discounted physician's opinion as inconsistent with the record as a whole, which indicates the claimant improved and stabilized with treatment); *Nance v. Colvin*, 2014 WL 3347027 (C.D. Cal. July 8, 2014) (discounting opinion in part because it predated knee surgery which resulted in "overall

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 9

improvement"); *Carmickle*, 533 F.3d at 1165 (affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of "claimant's long term functioning."). Mr. Shuff does not challenge this aspect of the ALJ's decision and this rationale is supported by substantial evidence. Specifically, the opinions of Dr. Carl from 2003 to 2006, Dr. Tallerico, D.C. in 2006, Dr. Boudreaux, M.D. in 2006, Mr. Selisch, in 2002 and 2005, and Dr. Turner, M.D. in 2011, all support the ALJ's findings that Mr. Shuff was capable of working and that his condition improved after surgery.

### 5. *Arnel Brion, M.D.*

In May 2005, Dr. Brion examined Mr. Shuff and opined he was "not ready to return to work as a meat wrapper or a fuel center clerk." Tr. 450. The ALJ reasonably discounted Dr. Brion's opinion as inconsistent with the opinions of other treatment providers or independent medical examiners as well as based on evidence that Mr. Shuff's condition improved shortly after Dr. Brion's opinion. Tr. 993. An ALJ may discount an opinion as inconsistent with the record as a whole including evidence the claimant's condition improved and stabilized with treatment. *See Batson*, 359 F.3d at 1195; 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."); *and see, e.g., Lawson*, 2013 WL 6095518; *Cox v. Astrue,* 2012 WL 3862135 (D. Or. Sept. 5, 2012) (the ALJ's reliance on a doctor's notes showing that a claimant improved after the doctor gave his opinion, was a specific and legitimate reason to reject the doctor's opinion). Here, the record shows that a few months after Dr. Brion's opinion, Mr. Shuff showed improvement on physical examination and a few months later his treating physician, Dr. Carl opined that Mr. Shuff could perform the requirements of meat wrapper and fuel station attendant. Tr. 583. In February 2006, Mr. Shuff's pain management physician, Dr. Boudreax, also opined he could

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE

perform the position of fuel center clerk as did Dr. Tallerico in April 2006.  Tr. 582, 702.

Moreover, less than a year after Dr. Brion's opinion, as the ALJ notes, Mr. Shuff was able to

return to work for a period of time.  Tr. 993.  In light of this evidence, the ALJ reasonably

discounted Dr. Brion's opinion as inconsistent with the record as a whole.

The ALJ also notes that Dr. Brion did not address other potential positions that Mr. Shuff

would be able or unable to perform beyond his past work or as a fuel center clerk.  Tr. 993.  As

such, even if the ALJ had not given sufficient reasons to discount Dr. Brion's opinion, any error

would be harmless as Dr. Brion's opinion did not assess any limitations inconsistent with the

RFC or the jobs identified at step five.  Mr. Shuff points to other treatment records which he

contends support Dr. Brion's opinion.  However, this argument again at best constitutes an

alternative interpretation of the record but fails to establish the ALJ's interpretation was

unreasonable. *See Tommasetti*, 533 F.3d at 1038.

In sum, the ALJ did not harmfully err in evaluating Dr. Brion's opinion.

> ### 6. *Patrick Bays, D.O., Brian Tallerico, D.O., Jennifer Carl, M.D., Marie Boudreaux, M.D., and Max Selisch, P.T.*

Mr. Shuff contends the ALJ erred by "engaging in a selective evaluation of the medical

evidence and failing to accurately discuss or properly weigh[] the evidence." Dkt. 11 at 10.

Specifically, Mr. Shuff argues the ALJ erred in giving significant weight to the treating opinions

of Dr. Carl and Dr. Boudreax, the examining opinions of Dr. Bays and Dr. Tallerico, and to the

opinions of physical therapist Mr. Selisch.

Mr. Shuff contends the ALJ misrepresented Dr. Bay's August 2005 opinion as indicating

Mr. Shuff "was ready to return to work" when in fact Dr. Bay indicated he "hope[d] Mr. Shuff

will be able to return to full duty on a full-time basis" after completing a work conditioning/work

hardening program.  Tr. 642.  However, in evaluating Dr. Bays' opinion the ALJ specifically noted that "Dr. Bays opined that the claimant was ready for a work conditioning or work hardening program with the expectation that the claimant could return to work upon its conclusion."  Tr. 991.  Mr. Shuff fails to establish the ALJ harmfully erred by misrepresenting or otherwise misevaluating Dr. Bay's opinion.

Mr. Shuff argues the ALJ erred in giving significant weight to Dr. Tallerico's opinion that he could perform his job as fuel cell attendant while failing to discuss Dr. Tallerico's findings that he had "significant weakness in the extensor hallucis longus, sensory abnormalities in the left foot and right knee, and the presence of discectomy and subsequent lumbar fusion … with expected residua that warrant a Category 4 impairment rating."  Dkt. 11 at 10; Tr. 698-700. However, Mr. Shuff's conclusory statement fails to explain how these findings undermine Dr. Tallerico's opinion or why the ALJ harmfully erred in failing to address them.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the error and that the error was harmful); *see Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 930 (9th Cir. 2003) (the court "will not consider any claims that were not actually argued in appellant's opening brief"); *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original) (the ALJ "need not discuss *all* evidence presented" to him or her, rather, the ALJ must only explain why "significant probative evidence has been rejected.").

Mr. Shuff also contends that "contrary to the ALJ's assertion, Dr. Tallerico never opined that Shuff could perform the job of fuel cell attendant on a full-time basis."  Dkt. 11 at 10. However, this argument is not supported by the record.  The record shows that Dr. Tallerico completed a job analysis form on April 11, 2006, the same date of his examination and report, in

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 12

which he indicated Mr. Shuff "[c]an perform his job [QFC – Fuel Cell Attendant] on a full time basis." Tr. 702. Mr. Shuff fails to establish the ALJ harmfully erred in evaluating Dr. Tallerico's opinion.

Mr. Shuff contends the ALJ erred in giving "significant weight" to Dr. Carl's treating opinions because overall her opinions do not show that he could perform full-time work on a sustained basis. Dkt. 11 at 10; Tr. 991. However, Mr. Shuff again fails to support this conclusory statement with any specific argument or explanation. Moreover, contrary to Mr. Shuff's argument, in May 2002, Dr. Carl found Mr. Shuff could work as a meat cutter while lifting no more than 50 pounds, using good body mechanics and substituting squatting for bending. Tr. 389. In May 2003, prior to Mr. Shuff's surgeries, Dr. Carl found him temporarily more limited but capable of "very light level" work on a full time basis and that he could sustain sedentary work, could sit for 1 hour at a time, stand for 30 minutes at a time and walk for one hour at a time, and lift and carry up to 10 pounds. Tr. 353-56. Following Mr. Shuff's surgery in November 2003, Dr. Carl opined he was expected to recover and be released to lifting up to 35 pounds and possibly 50 pounds. Tr. 323. In November 2005, she opined Mr. Shuff was capable of vocational reactivation on a full-time basis as well as performing the occupation of meat wrapper if he was limited to lifting to loads of 50 pounds or less and fuel center clerk if he could change positions every hour. Tr. 629, 634-35, 704. Finally, in February 2006 she opined Mr. Shuff could perform the occupations of meat wrapper and fuel station attendant. Tr. 583. The ALJ reasonably interpreted these opinions to indicate that, although there were periods where Mr. Shuff was more limited, such as leading up to his surgeries, this greater level of limitation was temporary (i.e. did not meet the duration requirement) and, overall Mr. Shuff was capable of performing full time sedentary work, with additional limitations, on a sustained basis.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 13

1      Mr. Shuff contends the ALJ erred in giving significant weight to Dr. Boudreax's opinion

2  that he could work as a fuel center clerk because "he was unable to sustain any of the jobs he

3  attempted after that [opinion]." Dkt. 11 at 10.  However, the ALJ reasonably relied on Dr.

4  Boudreax's opinion as evidence of Mr. Shuff's limitations at the time and Mr. Shuff's own

5  testimony that he was more limited is not sufficient to undermine a medical opinion.  To the

6  contrary, the ALJ can reject testimony given by a claimant when it is inconsistent with the

7  medical evidence.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may

8  consider inconsistencies between claimant's testimony and testimony from physicians

9  concerning the nature, severity, and effect of the symptoms of which claimant complains.).

10  Furthermore, Dr. Boudreax opined that Mr. Shuff could lift up to 48 pounds frequently, sit for up

11  to three hours at a time, stand for up to three hours at a time, walk for up to three hours at a time,

12  and could work as a fuel center clerk.  Tr. 578-599.  Mr. Shuff's claimed inability to continue

13  working as a meat cutter is not necessarily inconsistent with Dr. Boudreax's opinion.

14  Accordingly, Mr. Shuff fails to establish error.

15      Mr. Shuff contends the ALJ erred in giving significant weight to Mr. Selisch's opinions

16  on the grounds that they have "little overall relevance.  Dkt. 11 at 10-11.  Specifically, Mr. Shuff

17  notes that the 2002 opinions predate his two back surgeries and the late 2005 opinion is not

18  relevant to how he was doing in early 2007 and beyond.  *Id.*  However, as the Commissioner

19  points out, the ALJ does not suggest he is relying on Mr. Selisch's opinion specifically as

20  evidence of his condition in 2007 or later.  Dkt. 12 at 11.  Rather Mr. Shuff is required to

21  establish disability between the alleged onset date of September 22, 2001, and his DLI of

22  September 30, 2008.  As such, the ALJ properly considered Mr. Selisch's opinions from 2002

23  and 2005 as they are relevant evidence of his condition during the period in question.

1    Accordingly, Mr. Shuff's arguments fail to establish error.

2  B.    **Mr. Shuff's Testimony**

3        Mr. Shuff argues the ALJ erred in rejecting his symptom testimony.  Dkt. 11 at 11-16.

4  The ALJ found the medical evidence of Mr. Shuff's underlying impairments might reasonably

5  produce the symptoms alleged and did not find that Mr. Shuff was malingering.  Tr. 988.

6  Consequently, the ALJ was required to provide specific, clear and convincing reasons for

7  rejecting Mr. Shuff's testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015).  If the

8  ALJ's credibility finding is supported by substantial evidence in the record, the Court may not

9  engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Factors that

10 an ALJ may consider in weighing a claimant's testimony include inconsistencies in testimony or

11 between testimony and conduct, daily activities, and unexplained or inadequately explained

12 failure to seek treatment or follow a prescribed course of treatment.  *Orn v. Astrue*, 495 F.3d 625,

13 636 (9th Cir. 2007); SSR 96-7p (superseded by SSR 16-3p on March 16, 2016).

14       The ALJ discounted Mr. Shuff's testimony in part as inconsistent with his treatment

15 notes.  Tr. 988-89.  Although "subjective pain testimony cannot be rejected on the sole ground

16 that it is not fully corroborated by objective medical evidence, the medical evidence is still a

17 relevant factor in determining the severity of a claimant's pain and its disabling effects."  *Rollins*

18 *v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Moreover, an ALJ may discount a claimant's

19 testimony when it contradicts evidence in the medical record.  *See Johnson,* 60 F.3d at 1434.

20 Here, the ALJ reasonably discounted Mr. Shuff's testimony on the grounds that "[t]he treatment

21 record showed his back symptoms were not disabling to the extent h[e] alleged prior to his date

22 last insured, and the record showed improvement with treatment."  Tr. 988.  Specifically, the ALJ

23 notes that a neurological examination in August 2001 (after his February 2001 work accident and

just prior to his alleged onset date) was unremarkable with the exception of mildly positive left straight leg raise; in June 2003 straight leg test in was mildly positive on the left side, his manual motor testing, reflexes and sensation were intact and examination revealed no objective neurological findings; in January 2004, straight leg test again was only mildly positive on the left and negative on the right, motor and neurological exam was stable; steroid injections in May 2004 improved his pain symptoms and he was noted to be significantly improved. Tr. 989. Furthermore, in January 2005, a few months after undergoing surgery in November 2004, Mr. Shuff's surgeon concluded he was doing well enough that he could likely return to work after two weeks of conditioning; in May 2005 he was able to walk up to 2 miles and climb stairs to the third floor, his mobility was improving, straight leg raising tests were negative and in June 2005 his strength was within normal limits and he walked with normal gait; in October 2005 he was doing well and rated his pain as 3 or 4 out of 10; in November 2005, he had a normal gait, rose easily from a seated position and ambulated without difficulty; and in May 2008 he reported steroid injections improved his symptoms and he had no posterior leg or buttocks pain. *Id.* The ALJ reasonably concluded based on this record that the treatment records were not consistent with the level of disability Mr. Shuff alleged prior to his DLI.

Mr. Shuff contends the ALJ cited selective treatment notes which show some improvement and failed to acknowledge that he required spinal surgeries which, "fully supports [his] testimony about his inability to work since September 2001." Dkt. 11 at 11. However, contrary to Mr. Shuff's argument, the ALJ does, in fact, discuss Mr. Shuff's spinal surgeries extensively and concludes that, although he underwent surgery, his condition was not disabling and, in fact, that he showed significant improved with surgery. Tr. 985-95. Mr. Shuff's argument at best amounts to an alternative interpretation of the record but fails to establish the ALJ's

interpretation was unreasonable. *Tommasetti*, 533 F.3d at 1038.

The ALJ also notes that the objective imaging studies and lab tests did not support the degree of limitation and disability Mr. Shuff claimed. Tr. 989. Specifically, the ALJ notes that a 2001 MRI (the year of his alleged onset) showed only mild degenerative changes and that electrodiagnostic testing in November 2002 showed no evidence of left lumbosacral radiculopathy. *Id.* Moreover, one month after his second back surgery, in January 2005, xrays showed the hardware was in good position and he was doing well and MRIs from April 2005, March 2008, and April 2009, showed by and large mild degenerative findings and did not show significant change from other post-surgical studies. *Id.* Mr. Shuff argues that this objective testing cannot be relied upon to disprove his level of pain. Dkt. 11 at 12. However, even though the ALJ cannot discount a claimant's subjective pain testimony solely because it is not fully corroborated by objective medical evidence, it is still a relevant factor in evaluating the severity and disabling effect of that pain. *See Rollins*, 261 F.3d 853. Here, the ALJ properly considered the objective imaging studies and lab tests and reasonably concluded they have not revealed findings one would reasonably expect in the presence of a disabling back injury and the severity of the problems Mr. Shuff portrayed. Tr. 989. Although this was not a sufficient reason on its own to discount Mr. Shuff's testimony, the ALJ also gave other valid reasons for doing so.

The ALJ found Mr. Shuff's daily activities to be inconsistent with his claim that he is disabled. Tr. 990. Specifically, the ALJ noted that in June 2001, Mr. Shuff reported bike riding, going on 2-mile hikes, swimming, doing isometric exercises, and in July 2001 reported rowing a boat, lifting weights, swimming, and doing tai chi. *Id.*; 253, 257. In June 2003, he reported spray-washing his vehicle, in April 2005, he reported he could walk 1 mile, sit or stand for up to 30 minutes at a time and exercise in his home gym. Tr. 344, 447. In October 2005 he was able

to walk 1.6 miles on a treadmill in 29 minutes and in December 2005 he reported exercising daily, doing Pilates on a medicine ball and using a Gazelle machine. Tr. 538, 614. In January and February 2006, he reported his intent to resume boating and walking his dogs on the beach and reported following an exercise program of walking, swimming and stretching. Tr. 571, 593. He also indicated he was able to bike five miles and play with his dogs and the only medication he used was the occasional ibuprofen. Tr. 585. He reported cleaning his pellet stove in April 2008 and in June 2009 reported he could lift 40 pounds from floor level. Tr. 811, 894.

Mr. Shuff argues the ALJ erred in rejecting his testimony as inconsistent with his activities of daily living. Dkt. 11 at 13-14. He contends his activities do not show that he could perform any type of full-time competitive work activity. *Id.* However, Mr. Shuff presents nothing demonstrating the ALJ's findings lack support in the record. Rather, he argues his activities do not capture the true nature of his limitations and that, as he testified, he struggles with performing many daily activities. However, even if Mr. Shuff's view of his ability to perform daily activities suggests some difficulty functioning, the ALJ may rely upon a claimant's activities as grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Molina*, 674 F.3d at 1113. This is what the ALJ did here. The ALJ considered and rejected Mr. Shuff's testimony that he is disabled on the grounds that the activities discussed above show he is more functional than he claims. Specifically, Mr. Shuff testified that his impairments prevented him from working. Tr. 988. He testified he had great difficulty standing up straight, sitting up straight and walking long distances. Tr. 1020. He stated that he had difficulty sitting, even for a few minutes. Tr. 1021. However, the ALJ noted that the evidence during the relevant period showed Mr. Shuff was an active person who could sit for substantial periods (e.g. sit and ride his bike five miles), could

walk for substantial periods (e.g., hiking and walking significant distance), and could perform multiple different activities that involved all of his extremities (e.g. lifting, cleaning a stove, spray washing). The ALJ further noted that Mr. Shuff's activities showed improvement over time, i.e., after his surgeries, through his DLI. Tr. 991. The ALJ reasonably found Mr. Shuff's activities inconsistent with his testimony regarding the severity and limiting effect of his symptoms during the relevant period.

Finally, the ALJ noted that Mr. Shuff was able to return to past work as a meat cutter from April 2006 through July 2006 and managed a meat market from October 2006 through February 2007. Tr. 990. The ability to maintain employment "with a fair amount of success" during an alleged period of disability is a valid reason to discredit plaintiff's claim of disability. *Drouin v. Sullivan,* 966 F.2d 1255, 1258 (9th Cir.1992). Even if these jobs were, as Mr. Shuff claims, ultimately too strenuous for him, the ALJ reasonably found Mr. Shuff's ability to engage in them inconsistent with his claims of totally disabling impairment since September 2001. *See id.* (The ALJ reasonably considered that the claimant "was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs.").

Even if Mr. Shuff's alternative interpretation of his activities is also reasonable, the Court cannot say the ALJ's findings lack support in the record, and cannot say the ALJ's finding that Mr. Shuff's activities show he is more functional than he claims is unreasonable. Under these circumstances, the Court is required to affirm the ALJ's determination. *See Tommasetti*, 533 F.3d at 1038.

C.      **Lay Evidence**

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's

ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). Here, the ALJ considered the lay testimony of Laura Shuff, Mr. Shuff's wife. Tr. 180-87, 995.

In October 2010, Ms. Shuff submitted a statement indicating that Mr. Shuff: has a hard time standing without changing position or sitting or lying down; uses a device to grab anything out of arm's length; needs a cane for walking; can't sit in one position for more than 10 to 15 minutes; can walk for only about 15 minutes before stopping and resting for 10 to 15 minutes; is easily distracted, impairing his ability to read and follow instructions; can't kneel due to pain in his knees and difficulty getting back up; and his memory and concentration and understanding were getting worse, and his hands were numb and occasionally turned white and had no feeling. Tr. 185-87.

The ALJ properly discounted Ms. Shuff's statements as inconsistent with "the claimant's demonstrated abilities and the opinions of the claimant's treating physicians and independent medical examiners." Tr. 995. Inconsistency with the medical evidence is a germane reason to discount a lay witness' statements. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the opinions of Dr. Carl from 2003 to 2006, Dr, Tallerico, D.C. in 2006, Dr. Boudreaux in 2006, Mr. Selisch in 2002 and 2005, and Dr. Turner in 2011, all indicate Mr. Shuff was capable of substantially more functionally than indicated by Ms. Shuff. The ALJ further notes that Ms. Shuff's statements are similar to those of Mr. Shuff and the same reasons he did not fully accept Mr. Shuff's statements apply to Ms. Shuff's statements as well. This was also a valid reason to discount Ms. Shuff's statements. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

1  (9th Cir. 2009) (Where an ALJ has provided clear and convincing reasons for finding a claimant

2  not fully credible, those reasons are germane reasons for rejecting similar lay witness testimony.).

3       In sum, the ALJ did not err in discounting Ms. Shuff's statements.

4  D.    **RFC and Step Five**

5       Mr. Shuff contends the ALJ's errors in evaluating the evidence resulted in a defective

6  RFC and step five finding. Dkt. 11 at 18-19. However, as discussed above, the ALJ did not err

7  in evaluating the evidence and, as such, Mr. Shuff fails to establish error with respect to the RFC

8  and step five.

9  **CONCLUSION**

10       For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this

11  case is **DISMISSED** with prejudice.

12

13       DATED this 20th day of September, 2017.

14

15

16

17      JOHN C. COUGHENOUR
    United States District Judge

18

19

20

21

22

23

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 21